GEORGE S. ADONDAKIS, ESQ. (5904)
AKIKO KAWAMURA, ESQ. (8568)
HOBBS, ADONDAKIS & OLSON, L.C.
Felt Building, Suite 208
341 South Main Street
Salt Lake City, Utah 84111
Telephone: (801) 519-2555
Facsimile: (801) 519-2999

CHARLES R. WORK, ESQ.
KENNETH L. CAGE, ESQ.
DANIEL A. MULLEN, ESQ.
DOUGLAS G. EDELSCHICK, ESQ.
McDERMOTT, WILL & EMERY
600 13th Street, N.W.
Washington, D.C. 20005-3096
Telephone: (202) 756-8000

Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PRECISION VASCULAR SYSTEMS, INC.; STERTZER FAMILY TRUST; GERALD AND MYRA S. DORROS IRREVOCABLE TRUST; DORROS FAMILY PARTNERS LIMITED; VICHON NEVELLE S.A.; FORRESTAL SAN JOSE S.A.; COMMERCIAL SAN ANTONIO S.A.; PUMA HOLDING CO.; and PINECREEK ENTERPRISES, INC., | **COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | **2:01 C V - 0 5 6 4 C** |
| v. | Civil No. _____ |
| SARCOS L.C.; SARCOS SERVICES L.C.; SARCOS RESEARCH CORP.; SARCOS GROUP LP; SARCOS ENGINEERING | U.S. District Judge _____ |

CORP.; SARCOS MICROSENSORS INC.;
SARCOS MEDICAL CORPORATION;
SARCOS MICROSYSTEMS INCORPO-
RATED; SARCOS MICRO SYSTEMS L.C.;
SARCOS DEVELOPMENT CORPORATION;
SARCOS REHABILITATION SYSTEMS,
INC.; MICROJECT, INCORPORATED
(UTAH); MICROJECT, INCORPORATED
(DELAWARE); ANIMATE SYSTEMS
INCORPORATED; PROGRAMMABLE
DOSING SYSTEMS, INC.; SARCOS
ENTERTAINMENT CORPORATION;
SARCOS ENTERTAINMENT SYSTEMS,
INC.; INTERACTIVE TELECOMMUNICA-
TIONS CORPORATION; INTELLIGENT
MICROFUSION SYSTEMS; SARCOS
MANUFACTURING L.C.; STEPHEN C.
JACOBSEN, Ph.D.; FRASER M. SMITH,
Ph.D.; J. GORDON HANSEN, ESQ.; JOHN
DOE INC. 1-10; JOHN DOE L.C. 1-10; JOHN
DOE PARTNERS 1-10; and JOHN DOE
CORP. 1-10,

      Defendants.

Plaintiff Precision Vascular Systems, Inc. ("PVS"), on its own and on behalf of its share-

holders and together with its individual shareholders, Stertzer Family Trust, Gerald and Myra S.

Dorros Irrevocable Trust, Dorros Family Partners Ltd., Vichon Nevelle S.A., Forrestal San Jose

S.A., Commercial San Antonio S.A., Puma Holding Co. and Pinecreek Enterprises, Inc. (collec-

tively, the "Individual Investors"), complains of Defendants Stephen C. Jacobsen, Ph.D., Fraser

Smith, Ph.D., J. Gordon Hansen, Esq., and the "Sarcos Entities," including Sarcos L.C., Sarcos

Services L.C., Sarcos Research Corporation, Sarcos Group L.P., Sarcos Engineering Corp.,

Sarcos Microsensors Inc., Sarcos Medical Corporation, Sarcos Microsystems, Inc., Sarcos Micro

Systems L.C., Sarcos Development Corporation, Sarcos Rehabilitation Systems, Inc., Microject

Inc., Animate Systems, Inc., Programmable Dosing Systems, Inc., Sarcos Entertainment Corpo-

ration, Sarcos Entertainment Systems, Inc., Interactive Telecommunications Corp., Intelligent Microfusion Systems, Sarcos Manufacturing L.C., and the "Doe" Defendants (collectively, the "Defendants") for the following causes of action, and alleges as follows:

## NATURE OF ACTION

1.      PVS and the Individual Investors seek to remedy the Defendants' tortious and illegal conduct directed at them.  Stephen C. Jacobsen, with Fraser M. Smith, J. Gordon Hansen and the Sarcos Entities, engaged in a systematic and unlawful scheme to:  (1) create new corporate entities, (2) induce private investment in securities issued by those corporations, (3) transfer assets from those corporations to a Sarcos Entity that is wholly owned by Jacobsen, and (4) leave those stripped corporations, together with their investors, to founder and die.

2.      To these ends, Jacobsen and the Defendants violated federal and Utah securities laws as well as state law and breached their fiduciary duties to PVS and the Individual Investors by engaging in a calculated and deliberate scheme to pillage PVS assets for their own gain. Specifically, the Defendants: (1) violated federal and Utah securities laws by affirmatively misrepresenting material facts to the Individual Investors concerning the value of PVS and its intellectual property to induce them to invest in PVS; (2) breached their fiduciary duties to PVS by entering into self-dealing transactions that were unfair to PVS and that siphoned money and other assets from PVS to the Defendants; (3) misappropriated PVS's corporate opportunities; (4) interfered with PVS's relationships with its employees; (5) misappropriated and converted PVS's assets, including, but not limited to, PVS's patents, trade secrets, confidential information and other intellectual property; and (6) conspired to prevent PVS from raising new capital in an attempt to force a forfeiture of PVS's intellectual property.

3.      To remedy the Defendants' deliberate, malicious, tortious, and illegal conduct, PVS and the Individual Investors seek, as appropriate, compensatory and punitive damages, treble damages under the Utah Uniform Securities Act, an accounting and disgorgement of the Defendants' ill-gotten profits, injunctive relief to stop Defendants' ongoing tortious conduct directed at PVS and its shareholders, attorneys' fees, costs, pre- and post-judgment interest, and any such other relief as the Court deems appropriate.  PVS also seeks a declaratory judgment that relevant intellectual property belongs to PVS and not to Sarcos L.C. and that Sarcos L.C. must transfer all right, title and interest, or grant license rights to PVS, as appropriate.  Moreover, PVS seeks a declaratory judgment that certain noncompetition agreements are not enforceable against PVS employees.

### PARTIES PLAINTIFF

4.      PVS is a Utah corporation with its principal place of business in West Valley City, Utah.  PVS is a privately held corporation that specializes in the research and development of neurovascular and other medical devices.  Defendant Jacobsen originally incorporated PVS in 1996 as a wholly-owned subsidiary of Sarcos, Inc.  The corporate mission of PVS is to research, develop, and commercialize new neurovascular and other medical devices.  Although PVS has several products currently in production, PVS has not yet begun to sell any of its devices. Sarcos, Inc., later named SIM, Inc., merged into PVS on December 31, 1999.

5.      The Stertzer Family Trust is a trust organized under the laws of California for the purposes of estate planning and investment.  It purchased 1,111,111 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

6.    The Gerald and Myra S. Dorros Irrevocable Trust is a trust organized under the laws of Wisconsin for estate planning purposes. It purchased 944,444 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

7.    Dorros Family Partners Limited is a California limited partnership for the purposes of estate planning and investment. It purchased 166,667 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

8.    Vichon Nevelle S.A. is a personal holding company organized under the laws of Uruguay for investment purposes. It purchased 1,000,000 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

9.    Forrestal San Jose S.A. is a personal holding company organized under the laws of Panama for investment purposes. It purchased 55,556 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

10.    Commercial San Antonio S.A. is a personal holding company organized under the laws of Panama for investment purposes. It purchased 55,556 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

11.    Puma Holding Company is a personal holding company organized under the laws of the Bahamas for investment purposes. It purchased 555,556 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

12.    Pinecreek Enterprises, Inc. is a personal holding company organized under the laws of the British Virgin Islands for investment purposes. It purchased 277,778 shares of PVS Series A Preferred stock on June 22, 1998 and has held them continually since that time.

## PARTIES DEFENDANT

13.     Upon information and belief, Stephen C. Jacobsen, Ph.D. is an engineer and inventor of various technologies.  In 1983, Jacobsen founded Sarcos, Inc.  In 1996, Jacobsen founded PVS as a wholly-owned subsidiary of Sarcos, Inc.  From the time of PVS's incorporation until his resignation on January 5, 2001, Jacobsen served as a director and chairman of the board of PVS.  From the time of PVS's incorporation until September 2000, Jacobsen also served as CEO of PVS.  Until Sarcos, Inc. merged (under the name SIM, Inc.) into PVS on December 31, 1999, Jacobsen also served as a director and president of Sarcos, Inc.  Upon information and belief, Jacobsen is the director, president, manager, and sole member of defendant Sarcos L.C.  Jacobsen currently owns or controls approximately 31% of the common shares and 34% of the preferred shares of PVS, as well as options for additional preferred shares. Upon information and belief, Jacobsen owned approximately 66% of SIM, Inc. (previously Sarcos, Inc.) at the time it merged with PVS.  Sarcos LC, which is wholly controlled by Jacobsen, owns approximately 1.2% of the preferred shares of PVS.

14.     Upon information and belief, Fraser Smith, Ph.D. was a vice president and director of PVS from the time of its incorporation until his resignation on January 5, 2001. Smith was also the corporate secretary of PVS from July 6, 2000 until his resignation on January 5, 2001.  Smith is executive vice president of Sarcos L.C. and currently owns approximately 3.1% of the common shares and 1.4% of the preferred shares of PVS, as well as options for additional preferred shares.  Smith also owned shares of SIM, Inc. (previously Sarcos, Inc.) at the time it merged with PVS.

15.     Upon information and belief, J. Gordon Hansen, Esq. is a lawyer at the law firm of Parsons, Behle & Latimer in Salt Lake City, Utah, and has represented Jacobsen, Smith, Sarcos Inc., SIM, Inc., Sarcos Services L.C., Sarcos L.C., and PVS, as well as all other Sarcos Entities. Hansen has represented PVS in a multitude of corporate matters, including drafting employment agreements and equity compensation plans, drafting and negotiating assignments and licenses of intellectual property between Sarcos, Inc. and PVS, creating alleged lease and service agreements between Sarcos L.C. and PVS and various other corporate matters. The license and assignment agreements drafted by Hansen on behalf of PVS and Sarcos, Inc. are now the subject of a private arbitration brought against PVS by Hansen's firm on behalf of Sarcos L.C. The alleged lease and services agreements are now the subject of a state court action brought against PVS by Hansen's firm on behalf of Sarcos L.C.[1] Hansen also served as the corporate secretary of PVS from at least March 1997 through July 6, 2000. Hansen held shares in Sarcos, Inc. (then called SIM, Inc.) before it merged into PVS on December 31, 1999, and has been a shareholder of .68% of the Series A Preferred stock of PVS since that merger. Hansen served as a registered agent for PVS from its incorporation in February 1996 until February 28, 2001.

16.     Upon information and belief, Sarcos L.C. is a Utah limited liability company with its principal place of business in Salt Lake City, Utah. Sarcos L.C. is a privately held company wholly owned by defendant Jacobsen. Sarcos L.C. owns approximately 1.2% of the preferred shares of PVS. PVS is unaware of the business purpose of Sarcos L.C.

---

[1] *Sarcos L.C. v. Precision Vascular Systems, Inc.*, Civil No. 010902322, filed March 16, 2001 in the Third Judicial District Court in and for Salt Lake County, Utah.

17.     Upon information and belief, the remaining Sarcos Entities, including Sarcos Services L.C., Sarcos Research Corporation, Sarcos Group LP, Sarcos Engineering Corp., Sarcos Microsensors Inc., Sarcos Medical Corporation, Sarcos Microsystems, Inc., Sarcos Micro Systems L.C., Sarcos Development Corporation, Sarcos Rehabilitation Systems, Inc., Microject Inc., Animate Systems, Inc., Programmable Dosing Systems, Inc., Sarcos Entertainment Corporation, Sarcos Entertainment Systems, Inc.,  Interactive Telecommunications Corp., Intelligent Microfusion Systems, and Sarcos Manufacturing L.C., John Doe, Inc. 1-10, John Doe L.C. 1-10, John Doe Partners 1-10, John Doe Corp., 1-10, are alter egos of Stephen C. Jacobsen and/or Sarcos L.C. that do not practice corporate formalities and were created to defraud investors and shareholders.

## JURISDICTION AND VENUE

18.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 because some of the causes of action alleged herein arise under federal securities laws.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.     Venue is proper within this judicial district under 28 U.S.C. § 1391(b) and (c) as a substantial part of the events giving rise to PVS's claims occurred in the Central District of Utah. In addition, all of the Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

20.     Jacobsen founded Sarcos, Inc. in 1983 to exploit various technologies and was its director, president, and CEO.  Jacobsen founded PVS in 1996 as a wholly-owned subsidiary of Sarcos, Inc. to exploit catheter and guidewire technology invented by John Lippert.  Thereafter, Sarcos, Inc. was experiencing financial difficulties and had lost many employees.  In early 1998

when Jacobsen realized that he needed funding in order to keep Sarcos, Inc. solvent, Jacobsen

devised a scheme to use PVS to improve Sarcos, Inc.'s financial situation.

### Defendants Defrauded the Individual Investors

21.     On or about February 24, 1998, Jacobsen and Lippert flew to California to meet

with Dr. Simon Stertzer in Palo Alto for the purpose of soliciting an investment in PVS by Dr.

Stertzer and other investors known to Dr. Stertzer.  Discussions between Jacobsen and Dr.

Stertzer regarding a possible investment in PVS continued through March and April of 1998.  On

April 23, 1998, Dr. Stertzer introduced Dr. Gerald Dorros to Jacobsen, and Jacobsen expanded

his attempts to solicit significant funding to include Dr. Dorros and other investors known to Dr.

Dorros.

22.     During these meetings and communications, which were in person, by telephone,

via facsimile, and through the mails, Jacobsen misrepresented to the Individual Investors that

Sarcos, Inc. was assigning to PVS ownership rights to at least 26 different technologies that were

either in the process of being patented or were soon to be patented.  This was false because at

least six of the 26 purportedly assigned technology files were devoid of any patents, invention

disclosures, inventor notes, or substance.  Additionally, several of the assignments were im-

properly made.  Jacobsen knew at the time these statements were false because he embellished

descriptions of the intellectual property and added docket numbers because he did not think that

the existing list provided to him by the president of PVS looked positive enough for a selling

document.  Jacobsen also represented to Dr. Dorros, beginning or about April 23, 1998 and

continuing on several occasions thereafter, that PVS owned or had rights to all "Sarcos"

technology related to human medical uses.  Jacobsen knew at the time that he had no intention of

causing the Sarcos Entities to contribute all such technology to PVS.  Jacobsen intentionally

misrepresented the value, scope, and ownership of PVS's intellectual property in an effort to

deceive the Individual Investors concerning the true value of PVS and to induce them to invest in

PVS.

23.     These misrepresentations were material because they falsely and artificially

inflated the value of PVS and its assets and, had the truth been known to the Individual Investors,

it would have significantly altered the total mix of information available and would have deterred

the Individual Investors' from investing in PVS.

24.     Jacobsen made these misrepresentations on many occasions.  On one such

occasion, Jacobsen and Hansen, attorney for both Sarcos, Inc. and PVS, made the

misrepresentation that Sarcos, Inc. was assigning to PVS six non-existent files, namely Thorpe

North & Western LLP file numbers T6958, T6959, T6962, T6964, T6965, and T6966, in a fax to

attorneys for Dr. Stertzer dated June 4, 1998.  This misrepresentation was repeated to all the

Individual Investors, including, on or about June 22, 1998 when Jacobsen and Hansen sent

copies of the Amended and Restated Exclusive License Agreement  (the "License Agreement")

and the Technology Assignment Agreement  (the "Assignment Agreement") between Sarcos,

Inc. and PVS, dated June 22, 1998, (collectively "the Agreements") which contained the same

misrepresentation concerning the six non-existent files, to the Individual Investors.  Jacobsen

unequivocally misrepresented to Drs. Dorros and Stertzer, and through them to all the Individual

Investors, that Sarcos, Inc. had assigned to PVS all rights to the medical applications of various

technologies developed for the United States government defense and intelligence communities

and other industries.  Moreover, Jacobsen, Smith and Hansen misrepresented that there would be

only nominal charges for PVS's use of Sarcos, Inc. office space and certain personnel for a "very brief" period of time.

25.     Upon information and belief, Jacobsen also lied to the Dorros-Stertzer group of investors by informing them that they needed to act quickly and invest in PVS or else Jacobsen would allow other parties to invest in PVS. Jacobsen misrepresented to Drs. Stertzer and Dorros that another investor already had paid PVS $800,000 simply to look at PVS's books. In fact, PVS received only half of that money for a standstill agreement with a company that decided not to acquire PVS. In addition, by virtue of arrangements made by Jacobsen, Hansen, and Smith, $400,000 of that money went to Sarcos, Inc. The truth of these matters would have influenced whether the investors invested in PVS because it materially affected the actual and perceived value of PVS.

26.     Relying on these and other material misrepresentations and partial disclosures concerning the value of PVS and its intellectual property, the Individual Investors invested $7.5 million in PVS pursuant to a Stock Purchase Agreement dated June 22, 1998. These material misrepresentations damaged the Individual Investors by adversely affecting the value of their investment.

### Unfair License and Assignment Agreements

27.     Contemporaneous with the Stock Purchase Agreement, on June 22, 1998, Jacobsen and Smith -- wearing hats as officers and directors of both Sarcos, Inc. and PVS -- negotiated and caused PVS to enter into the Assignment Agreement and the License Agreement with Sarcos, Inc. Under the Agreements, Jacobsen agreed on behalf of both parties that (1) Sarcos, Inc. would assign various technologies to PVS for exploitation in intravascular

human medical applications, human urology and gynecology including reproductive health, and human gastroenterology (the "Medical Fields"); (2) PVS would license the technologies back to Sarcos, Inc. on a royalty-free basis for exploitation outside of the Medical Fields; and (3) PVS agreed to pay royalties to Sarcos, Inc. on sales of any eventual products. The Agreements were so financially significant to Sarcos, Inc. that one would reasonably expect it to assert a significant influence on Jacobsen's judgment when voting on its acceptance as a director of PVS. These agreements were never ratified by a majority of disinterested directors or shareholders and were unfair to PVS because they do not require Sarcos, Inc. to pay any royalties to PVS for licenses of PVS-owned patents, and because the agreements require PVS to pay royalties to Sarcos, Inc. for products derived from PVS-owned patents. Additionally, as has become evident, the Agreements give Jacobsen and Sarcos L.C. an incentive to harm PVS, because, in the event of PVS's financial difficulties, all intellectual property rights in PVS technology purportedly transfer to Sarcos L.C.

28.     Contrary to the representations and warranties made in the Technology Assignment Agreement, PVS did not receive all of the intellectual property that Sarcos, Inc. agreed to assign to PVS. As described above, at least six of the 26 technologies listed as being assigned to PVS were empty files, and several of the assignments were improperly made. PVS is thus damaged by having to comply with draconian licensing provisions, losing money by receiving no license fees for its own technology, paying royalties for technology it already purchased, and having to go to the capital markets for new financing with encumbered assets.

## Defendants' Siphoning of PVS Assets and Intellectual Property

29.     As of July 1998, Jacobsen, Lippert, Dr. Dorros, Dr. Stertzer, and Smith were the directors of PVS.  In addition, Jacobsen was chairman and CEO of PVS and Hansen was PVS's attorney, corporate secretary and registered agent for service.  As such, Jacobsen, Smith, and Hansen (the "Individual Defendants") owed the fiduciary duties of good faith, loyalty, and care to PVS.  At this time, Jacobsen, Smith, and Hansen also were officers and/or directors and/or attorney of Sarcos, Inc.

30.     When PVS was fully funded by a $7.5 million dollar investment from the Individual Investors, the Individual Defendants began in earnest their plan to plunder PVS of its assets.  The Individual Defendants began by skimming $400,000 off the top of the $7.5 million investment for themselves.  In addition, the Individual Defendants garnered wrongful profits through the Sarcos Entities at the expense of PVS.  Defendants also were motivated to despoil PVS because Sarcos, Inc., and later Sarcos L.C., would purportedly receive all technology previously assigned to PVS if PVS was liquidated for any reason.

31.     Notwithstanding the Individual Defendants' conflicts of interest, the disinterested directors of PVS had no reason to doubt the integrity of Jacobsen, Smith, or Hansen.  During the course of the next two years, the Individual Defendants breached their duties of loyalty, good faith, honesty and fair dealing when they improperly:  (1) approved the payment of at least 50% of Jacobsen's salary and at least 35% of Smith's salary by PVS -- neither of which was approved by the PVS board or were objectively fair and appropriate; (2) caused PVS to pay themselves bonuses totaling at least $100,000 which were not approved by the PVS board and were neither objectively fair or appropriate; (3) caused Jacobsen's own corporations, namely Sarcos, Inc.,

SIM, Inc. and Sarcos L.C., to fraudulently charge, overcharge and double charge PVS for rent, personnel, administrative and other overhead costs, and professional salaries; (4) caused employees who were paid by PVS to sign agreements with a Sarcos Entity that required the employees to assign any of their inventions to Sarcos Entities, including inventions created while working on PVS projects and being paid PVS money, and to enter into non-compete agreements with a Sarcos Entity that potentially applied to PVS; and (5) placed intellectual property and patents developed and paid for by PVS into the portfolio of the Sarcos Entities.

32.     In or around January 1999, the Individual Defendants also caused the invalid transfer of SIM, Inc. interests in intellectual property agreements and/or intellectual property to Sarcos L.C. prior to SIM, Inc.'s merger into PVS, without disclosure to or the consent of PVS, when such a transfer was not permissible without consent of PVS, and which consent was never obtained.  PVS also paid the vast majority of the costs associated with the acquisition of the intellectual property (*e.g.*, research and development, attorney fees, patent prosecution and filing fees), and PVS would have acquired the interests in the merger.  By this transfer, the Individual Defendants stripped PVS of a valuable asset and/or corporate opportunity relating to PVS's business.

33.     Hansen effectuated these self-dealing transactions by negotiating and drafting agreements in these transactions that were unfair to PVS, and by failing to bring Jacobsen's and Smith's fiduciary duty breaches to the attention of the board of directors.  Hansen, as attorney for PVS, also failed to advise PVS of the need for independent intellectual property counsel, in breach of his fiduciary duties.  In fact, the firm of Thorpe North & Western LLP in Salt Lake City, Utah represented both PVS and the Sarcos Entities in intellectual property matters -- a fact

known to Hansen.  Recognition of this conflict has led Thorpe North & Western LLP to

withdraw from representing both parties.  Hansen arranged for Thorpe North & Western LLP to

jointly represent PVS and Sarcos and to have joint counsel place PVS's intellectual property in

the name of Sarcos Entities and SIM, Inc.

34.     Defendants were able to complete these unfair and self-dealing transactions by

having employees of Sarcos Entities, principally Jacobsen, Smith or John Grennan, create

"invoices" and spreadsheet "backups" for the charges on behalf of Sarcos, Inc. and Sarcos L.C.,

and then by having Jacobsen, or other Sarcos, Inc. and Sarcos L.C. employees under Jacobsen's

direction, approve the invoices on behalf of PVS.  Defendants caused Sarcos employees to write

checks to Sarcos Entities on PVS's accounts to pay these "invoices" even though there was never

any written contract or lease to support their payment.  In substance, Sarcos, Inc. and Sarcos L.C.

employees paid Sarcos, Inc. and Sarcos L.C. with PVS's money.

35.     Jacobsen used threats, intimidation, and manipulation to accomplish his schemes.

Jacobsen threatened PVS employees who questioned his practices or instructions with termi-

nation.  Jacobsen's threats of termination were particularly potent because, by virtue of

contractual buy-back provisions in the employees' stock purchase agreements, the employees

would lose their shares and stock options if they were terminated for any reason.  This

effectively intimidated employees into silence and compliance.  Jacobsen also was as a yeller

and screamer who would shout down those who differed or disagreed with him.  In at least one

case, he struck someone who disagreed with him.  Employees were intimidated by Jacobsen and

wary of being perceived as crossing him.  On the few occasions when he was questioned,

Jacobsen, with the assistance of Smith or Hansen, concocted seemingly innocuous rationales for questioned actions, thus manipulating people into doing actions that they had questioned.

36.     As a result of this unfair and self-dealing scheme, the Defendants were unjustly enriched. The transactions discussed above contain unfair terms for PVS. For example, the PVS board and shareholders never knew about the officers' salaries and bonuses and never would have approved such inappropriate actions had they been disclosed. When confronted with Sarcos Entity overcharges and double charges, Sarcos L.C. and Jacobsen admitted that the "invoices" were unfair by cutting the outstanding invoice amounts for overhead and personnel services by half. In light of the fact that PVS paid all or almost all of the salaries of many "Sarcos" employees, the inclusion of a non-compete clause in the employees' contracts that potentially applies to PVS is unfair to PVS. Knowing that their actions were unlawful, Defendants concealed evidence of their wrongdoing by burying data revealing their overcharges and other self-dealing transactions in the back of lengthy reports which were supposed to be -- but invariably were not -- presented to the board. Additionally, the Sarcos Entities never have turned over many PVS records to PVS, but upon information and belief, maintain them in Sarcos facilities instead. A majority of disinterested directors and shareholders never ratified any of these transactions after full disclosure.

### PVS's Discovery Of Defendants' Misconduct

37.     Plaintiffs had no notice of any facts that would cast doubt on the integrity of Jacobsen, Smith or Hansen and thus reasonably relied on them as fiduciaries of PVS.

38.     In August 2000, PVS hired Glenn Foley to serve as its new chief executive officer in order to steer PVS into becoming a public corporation or to orchestrate a successful sale of the

company.  Through Foley's internal audit of PVS, Foley and the directors learned of Jacobsen's

misrepresentations and fraudulent actions.

39.     In December 2000, PVS moved out of the Sarcos L.C. building, and the billing to

PVS ceased.  Hansen was removed as Secretary as of July 6, 2000, when Dr. Fraser Smith took

over the position, and Hansen resigned as registered agent on February 20, 2001.  On January 5,

2001, Smith and Jacobsen resigned from the PVS board.

## FIRST CAUSE OF ACTION

*(Securities Fraud - 15 U.S.C. § 10(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5)*

40.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 39 of this

Complaint as if set forth fully herein.

41.     Defendants, in connection with the purchase or sale of securities, made the

foregoing statements, which they knew or recklessly disregarded were materially false and

misleading in that they contained material misrepresentations and failed to disclose material facts

necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading.

42.     Defendants, by their conduct, committed violations of Section 10(b) of the

Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder in that they:

        (a)     Employed devices, schemes, and artifices to defraud;

        (b)     Made untrue statements of material facts or failed to state material facts

               necessary in order to made statements made, in light of the circumstances,

               not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs.

43.    Plaintiffs had no notice of any facts that would cast doubt on the integrity of Defendants as fiduciaries of Plaintiffs and thus reasonably relied on the foregoing misstatements and omissions.

44.    Plaintiffs would not have entered into the foregoing transactions for the price paid, if at all, if they had known the truth of the foregoing misstatements and omissions.

45.    The foregoing misstatements and omissions directly and proximately caused Plaintiffs' injuries.

## SECOND CAUSE OF ACTION

*(Control Person Liability - 15 U.S.C. § 20(a))*

46.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 45 of this Complaint as if set forth fully herein.

47.    The Individual Defendants are jointly and severally liable with, and to the same extent as, the Sarcos Entities they controlled, pursuant to Section 20(a) of the Securities Exchange Act of 1934.

## THIRD CAUSE OF ACTION

*(Violation of Utah's Uniform Securities Act - Utah Code Ann. § 61-1-1, et seq.)*

48.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 47 of this Complaint as if set forth fully herein.

49.    By their conduct, Defendants violated the Utah Uniform Securities Act, Section 61-1-1, *et seq.*

50.     Defendants, in connection with the purchase or sale of securities, directly or indirectly made false statements of material fact or omitted to state material facts necessary in order to make the statements made not misleading.

51.     Defendants' conduct was intentional or reckless.

52.     Plaintiffs did not know and did not have reason to know the falsity of the foregoing misstatements and omissions.

53.     Plaintiffs had no notice of any facts that would cast doubt on the integrity of the Individual Defendants as fiduciaries of Plaintiffs, and thus Plaintiffs reasonably relied on the foregoing misstatements and omissions.

54.     Plaintiffs would not have entered into the foregoing transactions for the price paid, if at all, if they had known the truth of the foregoing misstatements and omissions.

55.     The foregoing misstatements and omissions directly and proximately caused Plaintiffs' injuries.

## FOURTH CAUSE OF ACTION

### *(Fraudulent Concealment)*

56.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 55 of this Complaint as if set forth fully herein.

57.     Defendants knowingly or recklessly concealed the foregoing presently existing material facts for the purpose of inducing Plaintiffs to act without knowledge thereof.

58.     Defendants had a duty to disclose the foregoing omitted facts.

59.     Plaintiffs lacked knowledge of the foregoing omitted facts and reasonably relied upon their nonexistence.

60.    Defendants' concealment of material facts directly and proximately caused Plaintiffs' injuries.

## FIFTH CAUSE OF ACTION

### *(Fraudulent Misrepresentation)*

61.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 60 of this Complaint as if set forth fully herein.

62.    Defendants knowingly or recklessly made the foregoing misstatements to Plaintiffs concerning presently existing material facts for the purpose of inducing Plaintiffs to act thereupon.

63.    Plaintiffs reasonably relied on the foregoing misstatements without knowledge of their falsity.

64.    The foregoing misstatements directly and proximately caused Plaintiffs' injuries.

## SIXTH CAUSE OF ACTION

### *(Breach of Fiduciary Duties)*

65.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 64 of this Complaint as if set forth fully herein.

66.    Jacobsen, as a director and chief executive officer of PVS, owed fiduciary duties of diligence, loyalty, and good faith to PVS at all times relevant for purposes of this action. Simultaneous with his positions at PVS, Jacobsen was the president and a director of Sarcos, Inc., SIM, Inc. and Sarcos L.C. as well as many, if not all, of the Sarcos Entities.

67.    Smith, as a director and corporate secretary of PVS, owed fiduciary duties of diligence, loyalty, and good faith to PVS at all times relevant for purposes of this action.

Simultaneous with his positions at PVS, Smith was an officer and/or director of Sarcos, Inc., SIM, Inc., and Sarcos L.C.

68.    Hansen, as corporate secretary and attorney for PVS, owed fiduciary duties of diligence, loyalty, and good faith to PVS at all times relevant for purposes of this action. Simultaneous with his responsibilities at PVS, Hansen served as attorney for Sarcos, Inc., SIM, Inc., and Sarcos L.C.

69.    Jacobsen, Smith and Hansen failed to perform their respective fiduciary duties in good faith and with ordinary prudence in the best interests of Plaintiffs.

70.    Jacobsen, Smith and Hansen's conduct was never approved by a majority of PVS disinterested directors or shareholders after full disclosure.

71.    Jacobsen, Smith and Hansen's conduct constitutes gross negligence, willful misconduct, or intentional infliction of harm on Plaintiffs.

72.    Jacobsen, Smith, and Hansen breached each of their fiduciary duties to Plaintiffs.

73.    The breaches of fiduciary duties owed by Jacobsen, Smith and Hansen have directly and proximately caused Plaintiffs' injuries, including but not limited to increased operating costs, decreased value of PVS and its assets, and the loss of valuable corporate opportunities rightfully belonging to PVS.

## SEVENTH CAUSE OF ACTION

*(Conversion)*

74.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 73 of this Complaint as if set forth fully herein.

75.     Defendants intentionally exercise control over intellectual property and other assets owned by Plaintiffs.

76.     Defendants' conduct directly and proximately caused Plaintiffs' injuries, including but not limited to lost profits and lost assets.

## EIGHTH CAUSE OF ACTION

### *(Accounting and Disgorgement)*

77.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 76 of this Complaint as if set forth fully herein.

78.     Defendants' conduct was deliberate, malicious, tortious, and illegal.

79.     Defendants, including Jacobsen, Smith, and the Sarcos Entities, must be required to account for and disgorge all salary, bonuses, benefits, and/or profits from the date of their first act of their misconduct to the present.

## NINTH CAUSE OF ACTION

### *(Declaratory Judgment - Intellectual Property Rights Belong To PVS)*

80.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 79 of this Complaint as if set forth fully herein.

81.     Plaintiffs and Defendants dispute ownership of the relevant interests in intellectual property.

82.     Plaintiffs contend the relevant interests in intellectual property belong to PVS and not to Sarcos L.C., which Defendants deny.

83.    Plaintiffs are entitled to an order declaring that the relevant interests in intellectual property belong to PVS, and requiring Sarcos to transfer all right, title and interest, and to grant license rights to PVS, as appropriate.

## TENTH CAUSE OF ACTION

*(Declaratory Judgment - Sarcos Noncompetition Agreements Are Invalid)*

84.    Plaintiffs and Defendants also dispute the validity of noncompetition agreements in Sarcos employment agreements for employees who were paid by PVS.

85.    Plaintiffs contend the relevant noncompetition agreements are invalid and unenforceable, which Defendants deny.

86.    Plaintiffs are entitled to an order declaring that the relevant noncompetition agreements are invalid and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, PVS respectfully requests this Court to enter judgment against Sarcos L.C., Jacobsen, Smith, Hansen and the Sarcos Entities and hereby award PVS:

1.    Actual damages;

2.    Punitive damages;

3.    Double or treble damages as provided by law;

4.    An accounting and disgorgement of all unlawfully earned profits;

5.    An accounting and disgorgement of all salary, bonuses, benefits and profits paid to each of the Individual Defendants from the date of the first breach of their fiduciary duties;

6.    Declaratory judgment that PVS is the rightful owner of the relevant intellectual property;

7.      Declaratory judgment that the relevant Sarcos noncompetition agreements are invalid and unenforceable;

8.      An order setting aside the transfer or assignment of intellectual property from SIM, Inc. to Sarcos L.C. as void for lack of consideration and as against public policy;

9.      Injunctive relief designed to prevent Defendants from continuing to infringe PVS's patents;

10.     Injunctive relief designed to prevent Defendants from continuing their pattern of tortious and illegal conduct;

11.     Pre-judgment and post-judgment interest as provided by law;

12.     Costs of prosecuting this lawsuit, including reasonable attorneys' fees; and

13.     Such other and further relief as the Court deems appropriate.

## JURY DEMAND

PVS respectfully requests that all issues of fact be tried before a jury.

DATED this _23_ day of July, 2001.

HOBBS, ADONDAKIS & OLSON, L.C.

_____

GEORGE S. ADONDAKIS
AKIKO KAWAMURA
Attorneys for Plaintiffs

**Plaintiffs' Addresses:**

McDERMOTT, WILL & EMERY
600 13th Street, N.W.
Washington, D.C.  20005-3096
Telephone:  (202) 756-8000